Timothy A. WARE, Plaintiff,

v.

**MEHARRY MEDICAL COLLEGE, Defendant.**

**No. 01S01–9408–CV–00078.**

Supreme Court of Tennessee, at Nashville.

April 24, 1995.

M. Reid Estes, Jr., Stewart, Estes & Donnell, Nashville, for plaintiff.

Robert L. Jones and G. Brian Jackson, Trabue, Sturdivant & DeWitt, Nashville, for amicus curiae Larry Pullen.

Leroy Cain, Jr., Russell B. Ennix, Petway, Blackshear, Cain & Ennix, Nashville, TN, for defendant.

## *OPINION*

DROWOTA, Justice.

The plaintiff, Timothy Ware, appeals from the Court of Appeals' ruling, which reduced the $75,000 judgment awarded him by the Davidson County Circuit Court to $25,000. The issue presented for our determination can be stated as follows: in a case appealed from the general sessions court to the circuit court and subjected to de novo review, is the longstanding common-law rule limiting plaintiff's recovery in the circuit court to the jurisdictional limits of the general sessions court viable in light of the adoption of the Tennessee Rules of Civil Procedure and the principles of judicial economy? [1] Although a majority of the Court of Appeals reduced Ware's judgment in accordance with this rule, we conclude that the rule should not be retained; and we adopt the following opinion of the dissenting judge in this case, William C. Koch, Jr., as our rationale.

## OPINION

. . . . .

### I.

Timothy Ware ... and Darnell Blair formed a partnership in late 1989 to operate a small video production business called Professional Video Services. The partners agreed that Mr. Ware would run the business ... and Mr. Blair would provide the equipment ...

Mr. Blair was Meharry's director of media services when he went into business with Mr. Ware. He told his partner that part of his job included selling the college's surplus electronic equipment, and Mr. Ware confirmed with Mr. Blair's supervisors that his duties included the purchase and sale of new and used electronic equipment. Mr. Blair obtained several hundred pieces of Meharry's audio and video equipment ... and sold them to [the partnership for a price substantially below their market value.]

A fire at the partnership's Music Row offices in February 1990 destroyed or damaged most of the equipment ... Mr. Ware's insurance company would not pay his claim because of Meharry's possible interest in the equipment, and Meharry refused to relinquish its claims unless Mr. Ware agreed to pay it a portion of his insurance proceeds. After Mr. Ware rejected Meharry's proposal, the college's agents hauled away several truck loads of equipment from the partnership's office.

Mr. Ware filed a warrant in the Davidson County General Sessions Court against Meharry to recover his personal property. The general sessions court dismissed the warrant, and Mr. Ware perfected an appeal to the Circuit Court for Davidson County. With the circuit court's permission, Mr. Ware filed amended complaints alleging fraud, conversion, and negligence and requesting compensatory and punitive damages. Meharry responded with a general denial and a counterclaim seeking Tenn.R.Civ.P. 11 sanctions and damages against Mr. Ware and his lawyer.

The jury returned a $75,000 verdict for Mr. Ware following a four-day trial. The trial court entered a judgment according to the verdict and also ordered Meharry to pay Mr. Ware $2,431.10 in discretionary costs ... Meharry perfected this appeal.

### II.

This appeal presents an opportunity to consider the continuing soundness of the

---

1. Meharry Medical College, the defendant in this lawsuit, raises numerous issues regarding the propriety of the jury's finding of liability. However, by previous order we have determined that those issues have no merit; thus, our review is limited to the jurisdictional issue.

judge-made limits on the circuit court's jurisdiction in cases appealed from the general sessions court. The Tennessee Supreme Court has not confronted this issue directly since the Tennessee Rules of Civil Procedure became effective almost twenty-five years ago. Present litigation reality indicates that limiting the circuit court's jurisdiction to that of the general sessions court interferes with the circuit court's ability to resolve all claims efficiently on the merits in one expeditious proceeding.

### A.

Today's general sessions courts trace their lineage back to the justice of the peace courts. *Weaver v. Cromer,* 54 Tenn.App. 510, 513, 392 S.W.2d 835, 836 (1965). They first appeared in Tennessee over fifty years ago when the General Assembly, responding to the growing popular dissatisfaction with the justice of the peace courts, began creating general sessions courts by private act. James G. France, *Effective Minor Courts: Key to Court Modernization,* 40 Tenn.L.Rev. 29, 41 (1972) ("France"); Paul M. Bryan & Isadore B. Baer, *General Sessions Courts: Origin and Recent Legislation,* 24 Tenn. L.Rev. 667, 667–68, 684–85 (1956). In 1959 the General Assembly finally replaced virtually all of the remaining justice of the peace courts with a state-wide system of general sessions courts.[2]

The general sessions courts share many of the same attributes of the justice of the peace courts. Like their predecessors, they are the courts that "touch elbows" with the ordinary people and provide "justice in the small everyday affairs of life." Robert S. Keebler, *Our Justice of the Peace Courts—A Problem in Justice,* 9 Tenn.L.Rev. 1, 4–5 (1930) ("Keebler"). They are not courts of record, *State v. McClintock,* 732 S.W.2d 268, 271 (Tenn. 1987); *Christopher v. Spooner,* 640 S.W.2d

833, 835 (Tenn.Ct.App.1982), and thus they provide many of the same informal procedures used in the justice of the peace courts. *Spencer v. Dixie Fin. Co.,* 205 Tenn. 485, 488, 327 S.W.2d 301, 302 (1959). Since the informality particularly suited the types of cases heard in the justice of the peace courts, *Baker v. Allen,* 2 Tenn. (2 Overt.) 175, 176 (1812), the General Assembly sought to preserve the same informality in the general sessions courts. *Weaver v. Cromer,* 54 Tenn.App. at 513, 392 S.W.2d at 836. Litigants in general sessions courts may plead their cases orally without filing written pleadings conforming to complex common-law rules. *Spencer v. Dixie Fin. Co.,* 205 Tenn. at 489, 327 S.W.2d at 302–03; *Woods v. Hancock,* 23 Tenn. (4 Hum.) 465, 466–67 (1844); *Wilson v. White,* 20 Tenn.App. 604, 607, 102 S.W.2d 531, 534 (1936). Accordingly, Tenn.Code Ann. § 16–15–729 (Supp.1993) provides that circuit courts should not dismiss cases originating in general sessions courts because of "any informality whatever."

General sessions courts also inherited many of the justice of the peace courts' jurisdictional characteristics and limitations. They derive their authority and jurisdiction from state law. *See Miller v. State,* 218 Tenn. 643, 646, 405 S.W.2d 466, 467 (1966) (justice of the peace courts); *Riden v. Snider,* 832 S.W.2d 341, 342 (Tenn.Ct.App.1991). The 1959 Act transferred the jurisdiction of the justice of the peace courts to general sessions courts. Tenn.Code Ann. § 16–15–501(a) (Supp. 1993). Later acts authorized county legislative bodies to expand their local general sessions courts' jurisdiction to include juvenile, domestic relations, worker's compensation, or probate matters.[3]

Despite the growth of their authority, general sessions courts remain courts of limited jurisdiction. *City of Knoxville ex rel. Roach v. Dossett,* 672 S.W.2d 193, 195

---

**2.** *See* 1959 Tenn.Pub. Acts ch. 109, now codified at Tenn.Code Ann. § 16–15–101, *et seq.*

**3.** Tenn.Code Ann. § 16–15–401(c) (Supp.1993); Tenn.Code Ann. § 16–15–501(b)(2); Tenn.Code Ann. § 17–2–209(a) (Supp.1993); Tenn.Code

Ann. § 36–5–209(b)(2) (1991); Tenn.Code Ann. § 16–15–5010 app. at 236–42 (Supp.1993) (Appendix, *Jurisdiction of Courts of General Sessions*).

(Tenn.1984); *State ex rel. Boone v. Torrence*, 63 Tenn.App. 224, 242, 470 S.W.2d 356, 364 (1971), whose authority depends upon the nature and amount of the dispute. Sam R. Gilreath & Bobby R. Aderholt, Caruthers' History of a Lawsuit § 511, at 584 (8th ed. 1963). Their judgments cannot exceed their jurisdictional limits or their subject matter jurisdiction. *Harris v. Hadden*, 75 Tenn. 214, 216 (1881); *Houser v. McKinnon*, 60 Tenn. 287, 288 (1872); *Morrow v. Calloway*, 8 Tenn. (1 Martin & Yer.) 240, 241 (1827).

### B.

The concern about the quality of justice dispensed by the justice of the peace courts also carried over to the general sessions courts. Justice of the peace court's decisions were considered "fragile," France, *supra*, 40 Tenn.L.Rev. at 42, for several reasons, including: (1) the courts' informal procedures, (2) the justices' lack of formal legal training, (3) the absence of a jury, (4) the high incidence of default judgments, and (5) the taint of the fee-based system for compensating justices.[4] The perception that general sessions courts' judgments are fragile continues even though general sessions court judges now receive fixed salaries. Thus, the General Assembly continued many of the same procedural safeguards designed to protect litigants against erroneous judgments.

The principal safeguard is the broad right of appeal to the circuit court. The circuit court's appellate jurisdiction over the general sessions courts is similar to their former appellate jurisdiction over the justice of the peace courts. It gives the circuit courts "supervisory control" over the general sessions courts and enables them "to confine ... [the general sessions courts] within the limits of their jurisdiction." Joseph Higgins & Arthur Crownover, Jr., Tennessee Procedure in Law Cases §§ 133, 1642 (1937).

Circuit courts may wield their appellate jurisdiction in two ways. First, they may vacate general sessions court judgments that exceed the particular court's subject matter jurisdiction or monetary jurisdictional limits. Second, they may provide the parties an entirely new trial. The latter procedure, authorized by Tenn.Code Ann. § 16–15–729, is commonly referred to as a "de novo" appeal.

De novo appeals from the general sessions courts differ from other types of appellate proceedings. The circuit court does not review the general sessions court's decision. *Hohenberg Bros. Co. v. Missouri Pac. R.R.*, 586 S.W.2d 117, 119 (Tenn.Ct. App.1979). Rather, it provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court. *Teague v. Gooch*, 206 Tenn. 291, 296, 333 S.W.2d 1, 3 (1960); *Odle v. McCormack*, 185 Tenn. 439, 445, 206 S.W.2d 416, 419 (1947); *Braverman v. Roberts Constr. Co.*, 748 S.W.2d 433, 435 (Tenn.Ct.App.1987); Lawrence A. Pivnick, Tennessee Circuit Court Practice, § 3–10, at 115 (3d ed. 1991) ("Pivnick").

### C.

The transition from the justice of the peace courts to the general sessions courts is relatively straightforward to this point. Ambiguity, however, exists concerning the procedure to be followed in the circuit court and the scope of the circuit court's jurisdiction when the case arrives from the general sessions court. The unmistakable trend is to use the circuit court's procedural flexibility to expand the scope of its jurisdiction and to provide complete resolution of all the claims between all the parties.

Circuit courts must regard cases appealed from general sessions courts with great indulgence and must not dismiss these cases because of informalities in the general sessions proceedings. Tenn.Code Ann. § 16–15–729; *Spencer v. Dixie Fin. Co.*,

---

**4.** Justices of the peace did not receive a fixed salary but rather derived their compensation from fees paid by the litigants. T.L. Howard, *The Justice of the Peace System in Tennessee*, 13 Tenn.L.Rev. 19, 22, 32–35 (1934). Some justices' fees exceeded the salary of the Chief Justice of the Tennessee Supreme Court. Keebler, *supra*, 9 Tenn.L.Rev. at 14.

205 Tenn. at 491, 327 S.W.2d at 303. Even though the Tennessee Rules of Civil Procedure apply to general sessions cases appealed to the circuit court, *see* Tenn. R.Civ.P. 1,[5] the parties are not required to file formal pleadings. *Vinson v. Mills,* 530 S.W.2d 761, 765 (Tenn.1975); Pivnick, *supra,* § 3–10, at 115. The parties may, however, without the court's direction, file pleadings, engage in discovery, and take advantage of the procedural flexibility in the Tennessee Rules of Civil Procedure.

At one time the parties had little ability to amend their cases once they were appealed to the circuit court. The circuit court's jurisdiction depended on the justice of the peace court's or the general sessions court's jurisdiction. *Morgan v. Betterton & Co.,* 109 Tenn. 84, 89–90, 69 S.W. 969, 970 (1902); *Marlin v. Merrill,* 25 Tenn. App. 328, 335, 156 S.W.2d 814, 818 (1941); *Security Inv. Co. v. White,* 19 Tenn.App. 540, 550, 91 S.W.2d 581, 587 (1935). Thus, cases appealed to the circuit court were limited to the subject matter jurisdiction, causes of action, and parties in the lower court's action. *Morehead v. Clopton,* 517 S.W.2d 3, 4 (Tenn.1974); *New York Casualty Co. v. Lawson,* 160 Tenn. 329, 339–40, 24 S.W.2d 881, 884 (1930); *Moran v. Weinberger,* 149 Tenn. 537, 546, 260 S.W. 966, 968 (1924); Pivnick, *supra,* § 3–10, at 114.

At the same time, Tenn.Code Ann. § 16–15–729 and its predecessors directed the circuit court to "allow amendments in the form of the action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper." The circuit courts have thus permitted amendments that add new parties,[6] that add new causes of action,[7] that add a new counterclaim, cross-claim, or third-party claim,[8] or that add new defenses.[9] The circuit courts have also permitted amendments increasing the amount of the

damages. *Forde v. Fisk Univ.,* 661 S.W.2d 883, 884 (Tenn.Ct.App.1983). They have not, however, permitted amendments increasing the amount of damages beyond the general sessions court's monetary limits. *Patterson v. Sheffield,* 54 Tenn. (5 Cold.) 373, 374–75 (1872). Later dicta reiterates this monetary limitation on the circuit courts' jurisdiction. *Kirby v. Cramer,* 219 Tenn. 447, 451, 410 S.W.2d 724, 725 (1967); *Sale v. Eichberg,* 105 Tenn. 333, 346, 59 S.W. 1020, 1023–24 (1900); *Tuck v. Chaffin,* 89 Tenn. 566, 568, 15 S.W. 97, 97–98 (1891). However, the limitation has not provided the basis for a decision on the merits since the Tennessee Rules of Civil Procedure went into effect.

Circuit courts do not have monetary limits on their jurisdiction in civil cases. Tenn. Code Ann. § 16–10–106 (1980). The reasons for limiting their jurisdiction in cases appealed from the general sessions courts are not readily apparent. The only reported decision touching on the question concerns the operation of the savings statute when the plaintiff nonsuits a case after the defendant appeals to the circuit court. While the Tennessee Supreme Court held that the plaintiff could nonsuit the case, it also stated that the refiled suit would be subject to the general session court's monetary limits. *Moran v. Weinberger,* 149 Tenn. at 543–44, 260 S.W. at 968. The decision rested on the language of the savings statute itself, but the court also reasoned that the plaintiff's decision to file suit in justice of the peace court somehow "lulled [the defendant] into indifference" and "[threw the defendant] off his guard." *Moran,* 149 Tenn. at 543, 547, 260 S.W. at 967, 968–69.

No other court has expressly followed *Moran's* reasoning, and the General Assembly has rejected it, at least in part. In 1985 the General Assembly amended Tenn.

5. Tenn.R.Civ.P. 1 provides in part that "... these rules shall govern the procedure in the circuit and chancery courts of Tennessee ... in all civil actions, whether at law or in equity, including civil actions appealed or otherwise transferred to these courts."

6. *Cooke v. Neighborhood Grocery,* 173 Tenn. 681, 684, 122 S.W.2d 438, 440 (1938).

7. *Shay v. Harper,* 202 Tenn. 141, 147, 303 S.W.2d 335, 338 (1957).

8. *Vinson v. Mills,* 530 S.W.2d at 765.

9. *Clark v. Howard,* 18 Tenn. (10 Yer.) 250, 251 (1837); *Phillips v. Tidwell,* 26 Tenn.App. 543, 554, 174 S.W.2d 472, 477 (1942).

Code Ann. § 28–1–105(a), –114(c) (Supp. 1993) to permit persons who nonsuit their cases in a general sessions court before a decision on the merits to refile their case in the circuit court. In this circumstance, both the newly filed claim and any counterclaim, cross-claim, or third-party claim may exceed the general sessions court's monetary limits even though the case originated in the general sessions court.[10]

### D.

The Tennessee Rules of Civil Procedure favor using a single proceeding to resolve all the parties' disputes on the merits. *Karash v. Pigott,* 530 S.W.2d 775, 777 (Tenn.1975); *Quelette v. Whittemore,* 627 S.W.2d 681, 682 (Tenn.Ct.App.1981). They govern civil actions appealed to the circuit court. Tenn.R.Civ.P. 1. Giving them full effect with regard to de novo appeal from the general sessions courts will not only encourage the parties to select the most appropriate judicial forum but will also avoid multiple proceedings to resolve the parties' disputes when they can be resolved in a single proceeding.[11]

Removing the judge-made monetary limits on the circuit court's jurisdiction over de novo appeals will not undermine the general sessions courts, nor will it overwhelm the circuit courts. Parties desiring to avoid the general sessions courts' monetary limits may already bypass the general sessions courts and file their suits in the circuit courts. General sessions courts remain particularly suited for many types of minor disputes, and thus parties desiring a quick, less formal disposition of their claims will continue to file suit in the general sessions courts.

No other policy reason exists to limit the circuit court's jurisdiction or to deny the parties full advantage of the Tennessee Rules of Civil Procedure once the case arrives in the circuit court. Removing the jurisdictional limits will not introduce appreciable delays in resolving the cases. Nor will it create a notice problem because the defendant will already be aware that it has been sued because of the service of the general sessions warrant. Nor will it impede or expand the parties' discovery rights since both parties may already take full advantage of all available discovery procedures once the case reaches circuit court.

Accordingly, I would hold that cases appealed from the general sessions court to the circuit court pursuant to Tenn.Code Ann. § 16–15–729 should be treated for all purposes as if they originated in the circuit court. The parties should be permitted to file amended pleadings to the fullest extent permitted by the Tenn.R.Civ.P. 15 without regard to the general sessions court's monetary limits. Doing so will promote judicial economy by enabling the parties to resolve their disputes on the merits in a single proceeding.

We agree with Judge Koch's well researched and reasoned dissent: the common-law rule limiting a plaintiff's recovery to the jurisdictional limits of the general sessions court in cases appealed to the circuit court is not compatible with the objectives of the Tennessee Rules of Civil Procedure and modern notions of judicial economy; nor does the rule provide any benefits which offset these deficiencies. Accordingly, the judgment of the Court of Appeals is reversed and the trial court's judgment is reinstated.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.

---

**10.** One author has incorrectly speculated that the wording of the 1985 legislation, at least by implication, permits amendments in the circuit court that exceed the general sessions court's monetary limits even in the absence of a nonsuit. Pivnick, *supra,* § 3–10 n. 28. The language of the statute does not support this conclusion, and the legislation's House sponsor informed the House Judiciary Committee and the House Calendar Committee that it applied only to nonsuited cases and not to de novo appeals to the circuit court after the general sessions court had decided the case on the merits.

**11.** Prior decisions have alluded to the problems with counterclaims, cross-claims, and third-party claims resulting from imposing monetary limits on the circuit court's jurisdiction. *See Sale v. Eichberg,* 105 Tenn. at 346, 59 S.W. at 1024; *Riden v. Snider,* 832 S.W.2d at 343.